IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RONALD ADAMS,

               Plaintiff,

vs.                                   Case No. 15-1074-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

               Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff
supplemental security income payments.  The matter has been
fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

This case involves termination of benefits after plaintiff was found disabled.  A seven-step sequential evaluation process is used in termination-of-benefit reviews in case involving supplemental security income.  If the Commissioner meets his burden of establishing that the claimant's medical condition has improved and that the improvement is related to the claimant's

4

ability to work, the Commissioner must then demonstrate that the claimant is currently able to engage in substantial gainful activity.  Hayden v. Barnhart, 374 F.3d 986, 988 (10th Cir. 2004).  The burden of proof is on the Commissioner in a termination-of-benefits review.  Hayden, 374 F.3d at 991; Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994).

     The seven-step sequential evaluation process is as follows: (1) Does the claimant have an impairment or combination of impairments which meets or equals the severity of a listed impairment? (If yes, the claimant is still disabled.) (2) If not, has there been medical improvement?  If there has been medical improvement, as shown by a decrease in medical severity, see step 3.  If there has been no decrease in medical severity, there has been no medical improvement (see step 4). (3) If there has been medical improvement, the agency must determine whether it is related to the claimant's ability to work (whether there has been an increase in the residual functional capacity (RFC) based on the impairment that was present at the time of the most favorable medical determination).  If medical improvement is not related to the claimant's ability to work, see step 4.  If medical improvement is related to claimant's ability to work, see step 5. (4) If no medical improvement was found at step 2, or that the medical improvement was found at step 3 not to be related to

5

claimant's ability to work, the agency considers a number of exceptions; if none of them apply, claimant's disability will be found to continue.

(5) The agency will next determine whether all of the claimant's current impairments in combination are severe.  If claimant has no severe impairments, claimant will no longer be considered disabled.

(6) If claimant's impairments are severe, the agency will assess the claimant's current ability to do substantial gainful activity.  The agency will assess the claimant's RFC and consider whether the claimant can perform past work.  If claimant can perform past work, claimant will no longer be considered disabled.

(7) If claimant cannot perform past work, the agency will consider, given claimant's RFC, whether claimant can perform other work in the national economy.

20 C.F.R. § 416.994(b)(5).

To apply the medical improvement test, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most favorable medical decision finding the claimant disabled.  Then, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's RFC based on the current severity of the

impairment(s) which was present at the claimant's last favorable medical decision.  The ALJ must then compare the new RFC with the RFC before the putative medical improvements.  The ALJ may find medical improvement related to an ability to work only if an increase in the current RFC is based on objective medical evidence.  Shepherd v. Apfel, 184 F.3d 1196, 1201 (10th Cir. 1999).

## II.  History of case

On October 25, 2013, administrative law judge (ALJ) Melvin B. Werner issued his decision (R. at 12-20).   The ALJ noted that in a decision dated February 10, 2009, plaintiff was found disabled as of March 9, 2006.  On March 7, 2012, it was determined that plaintiff was no longer disabled as of March 1, 2012.  Plaintiff then requested a hearing before an ALJ (R. at 12).

The most recent favorable medical decision finding that plaintiff was disabled is the decision dated February 10, 2009. This is known as the comparison point decision (CPD) (R. at 13). At the time of the CPD, plaintiff had medically determinable impairments.  These impairments were found to result in the RFC to perform less than the full range of sedentary work.  The medical evidence establishes that plaintiff did not develop any additional impairments after the CPD through March 1, 2012. Thus, the plaintiff's current impairments are the same as the

CPD impairments.  Since March 1, 2012, plaintiff has not had an impairment or impairments that meets or equals a listed impairment (R. at 14).

The ALJ then found that medical improvement occurred as of March 1, 2012.  The ALJ determined that, as of March 1, 2012, plaintiff had the RFC to perform light work (R. at 15).  The medical improvement was found to be related to the ability to work because it resulted in an increase in plaintiff's RFC (R. at 18).  As of March 1, 2012, plaintiff's impairments were still severe.  As of March 1, 2012, plaintiff is unable to perform past relevant work.  As of March 1, 2012, plaintiff can perform a significant number of jobs in the national economy (R. at 19).  Therefore, the ALJ concluded that plaintiff's disability ended on March 1, 2012, and plaintiff has not been disabled since that date (R. at 20).

## III.  Are the ALJ's RFC findings supported by substantial evidence?

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC

assessment conflicts with an opinion from a medical source, the
ALJ must explain why the opinion was not adopted.  SSR 96-8p,
1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20
C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530
n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson
v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

       When the ALJ fails to provide a narrative discussion
describing how the evidence supports each conclusion, citing to
specific medical facts and nonmedical evidence, the court will
conclude that his RFC conclusions are not supported by
substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx.
781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must
be sufficiently articulated so that it is capable of meaningful
review; the ALJ is charged with carefully considering all of the
relevant evidence and linking his findings to specific evidence.
Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5,
2003).  It is insufficient for the ALJ to only generally discuss
the evidence, but fail to relate that evidence to his
conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49
F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to
comply with SSR 96-8p because he has not linked his RFC
determination with specific evidence in the record, the court
cannot adequately assess whether relevant evidence supports the
ALJ's RFC determination.  Such bare conclusions are beyond

meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

On February 4, 2012, Dr. Astik performed a consultative examination on the plaintiff.  Dr. Astik found that plaintiff was able to squat and rise with moderate difficulty.  He had some difficulty getting up and down from the exam table.  He was able to walk on heels and toes with moderate difficulty.  Dr. Astik stated that, regarding his back and neck pain, plaintiff does have some decreased range of motion of his lumbar spine and of his cervical spine.  He has some walking limitations due to pain and stiffness.  He was found to have difficulty with performing most of the maneuvers, including rising from a squat, standing without assistance, and walking on his heels and on his toes (R. at 286).

Significantly, Dr. Astik stated that "the claimant provided us with his best effort during the examination" (R. at 287).  He concluded that plaintiff would have mild limitations standing due to pain, and moderate limitations with walking due to pain. He found that plaintiff had moderate limitations with lifting due to pain and could lift and carry no more than 15 pounds.  He concluded that plaintiff could bend, stoop, crouch, and squat only occasionally due to pain and stiffness.  He found no manipulative or environmental limitations (R. at 287).

Dr. Rosamond filled out an RFC assessment on March 7, 2012 after reviewing the medical records (R. at 288-293).  He limited plaintiff to carrying 20 pounds occasionally and 10 pounds frequently.  He found that plaintiff could stand/walk for 6 hours, and sit for 6 hours in an 8 hour workday.  He limited plaintiff to only occasional postural limitations, and limited him in his ability to reach overhead due a limited range of motion with his neck.  He also indicated that plaintiff should avoid concentrated exposure to extreme cold and heat, and vibration (R. at 289-291).  Dr. Rosamond also summarized the medical evidence, including MRI test results from 2008, and discussed the examination by Dr. Astik (R. at 293).

Dr. Trowbridge filled out an RFC assessment on April 4, 2012 after reviewing the medical records (R. at 305-310).  The findings of Dr. Trowbridge are identical to those of Dr. Rosamond in exertional, postural, manipulative and environmental limitations (R. at 306-308).  Dr. Trowbridge also summarized the examination by Dr. Astik (R. at 310).

The ALJ gave little weight to the opinions of Dr. Astik, noting that the basis for the exertional and postural limitations set forth in the report was pain and stiffness.  The ALJ stated that while the plaintiff alleged such subjective complaints, there is "no" supporting objective evidence that would suggest such limitations.  The ALJ also noted the lack of

treatment and follow-up with general medical providers would suggest he is not as limited as alleged (R. at 18).

The ALJ also gave little weight to the opinions of Dr. Rosamond and Dr. Trowbridge.  The ALJ noted that their limitations are based on Dr. Astik's opinion, which relied heavily on plaintiff's subjective complaints, with only minimal objective findings (R. at 18).  Thus, the ALJ rejected all of the medical opinion evidence with regard to whether plaintiff had any postural, manipulative and environmental limitations.

The ALJ discounted the opinion of Dr. Astik, an examining physician, because plaintiff alleged subjective complaints, but, according to the ALJ, there was no supporting objective evidence that would suggest such limitations.  Furthermore, the ALJ discounted the opinions of Dr. Rosamond and Dr. Trowbridge because their limitations were based on Dr. Astik's opinions, which relied heavily on plaintiff's subjective complaints, with only minimal objective findings.

First, although the ALJ asserted that there is "no supporting objective evidence" that would support the exertional and postural limitations found by Dr. Astik (R. at 18), the ALJ, citing to Dr. Astik's report, had previously stated that the "only objective findings indicative of continued limitations was a limited range of motion, which was sufficient to allow plaintiff to perform postural maneuvers (R. at 17) (although all

12

three physicians found that plaintiff's ability to perform postural maneuvers was limited).  Thus, the ALJ had previously found that Dr. Astik's report, in fact, contained objective findings that plaintiff had a limited range of motion regarding plaintiff's postural maneuvers.  The two statements are clearly contradictory, and undermine the rationale for discounting the opinion of Dr. Astik.

Second, the ALJ noted the exertional and postural limitations found by Dr. Astik, and further noted that the basis for all these limitations was pain and stiffness.  However, as noted above, these opinions were given little weight because, according to the ALJ, they were based on subjective complaints and there was no supporting objective evidence.  However, without explanation, the ALJ nonetheless adopted the opinions of the three physicians regarding plaintiff's exertional limitations (limiting plaintiff to light work), but did not adopt their opinions regarding plaintiff's postural limitations. If the physician's opinions regarding plaintiff's exertional and postural limitations should be accorded little weight because they are supposedly based on subjective complaints in the absence of objective evidence, the ALJ erred by failing to explain why he nonetheless adopted the opinions of the three physicians regarding plaintiff's exertional limitations, but not their opinions regarding plaintiff's postural limitations.

Third, in the case of <u>Langley v. Barnhart</u>, 373 F.3d 1116,
1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr.
> Hjortsvang's opinion based upon his own
> speculative conclusion that the report was
> based only on claimant's subjective
> complaints and was "an act of courtesy to a
> patient." <u>Id</u>. The ALJ had no legal nor
> evidentiary basis for either of these
> findings. Nothing in Dr. Hjortsvang's
> reports indicates he relied only on
> claimant's subjective complaints or that his
> report was merely an act of courtesy. "In
> choosing to reject the treating physician's
> assessment, an ALJ may not make speculative
> inferences from medical reports and may
> reject a treating physician's opinion
> outright only on the basis of contradictory
> medical evidence and *not due to his or her
> own credibility judgments, speculation or
> lay opinion*." <u>McGoffin v. Barnhart</u>, 288 F.3d
> 1248, 1252 (10th Cir.2002) (quotation
> omitted; emphasis in original). And this
> court "held years ago that an ALJ's
> assertion that a family doctor naturally
> advocates his patient's cause is not a good
> reason to reject his opinion as a treating
> physician." <u>Id</u>. at 1253.

Subsequently, in the case of <u>Victory v. Barnhart</u>, 121 Fed. Appx.
819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's
> opinion was based on claimant's own
> subjective report of her symptoms
> impermissibly rests on his speculative,
> unsupported assumption. <u>See</u> <u>Langley</u>, 373
> F.3d at 1121 (holding that ALJ may not
> reject a treating physician's opinion based
> on speculation). We find no support in the
> record for the ALJ's conclusion. Nothing in
> Dr. Covington's report indicates that he
> based his opinion on claimant's subjective

>       complaints, and the ALJ's finding ignores
>       all of Dr. Covington's examinations, medical
>       tests, and reports. Indeed, the ALJ's
>       discussion of Dr. Covington omits entirely
>       his March 22, 2001 examination and report.
>       His April 3, 2001 statement might well have
>       been based on his recent first-hand
>       examination and observation of claimant
>       during this examination, performed less than
>       two weeks earlier, rather than on claimant's
>       subjective complaints, as the ALJ
>       speculated. See Morales v. Apfel, 225 F.3d
>       310, 317 (3d Cir.2000) (noting that the
>       treating physician's opinion may "reflect
>       expert judgment based on a continuing
>       observation of the patient's condition over
>       a prolonged period of time").

121 Fed. Appx. at 823-824.

As Langley makes clear, the ALJ must have a legal or evidentiary basis for asserting that a medical source report was based on plaintiff's subjective complaints. However, the ALJ did not cite to either a legal or evidentiary basis for his assertion that the opinions of Dr. Astik, and the two physicians who reviewed his report, were based on plaintiff's subjective complaints. Dr. Astik saw and examined plaintiff on February 4, 2012, the same date that he prepared his report (R. at 282-287). As the court stated in Victory, Dr. Astik's assessment might well have been based on his recent first-hand examination and observation of plaintiff during the examination, performed on the day of the assessment, rather than on plaintiff's subjective complaints, as the ALJ speculated. It should also be noted that

Dr. Astik indicated that plaintiff provided him with his best effort during the examination (R. at 287).

Fourth, the ALJ did not cite to any medical opinion in support of his finding of no postural, manipulative or environmental limitations.  However, an exact correspondence between a medical opinion and the RFC is not required.  In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to, medical opinions in the file.  That said, in cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of a plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment, it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance. Wells v. Colvin, 727 F.3d 1061, 1071-1072 (10th Cir. 2013) (in Wells, the ALJ rejected 3 medical opinions, finding that they were inconsistent with the other evidence in the file; the court directed the ALJ, on remand, to carefully reconsider whether to adopt the restrictions on plaintiff's RFC detailed in the medical opinions, or determine whether further medical evidence is needed on this issue).

All three physicians agreed that plaintiff had postural limitations.  There is no medical opinion evidence that plaintiff does not have postural limitations.  Although the ALJ

may have given more weight to the opinions of Dr. Astik by not adopting manipulative or environmental limitations, the ALJ should articulate why he gave greater weight to the opinions of Dr. Astik in these areas.

In light of the numerous problems surrounding the ALJ's analysis of the medical source opinions, and the weight accorded to them, the court finds that substantial evidence does not support the ALJ's RFC findings.  This case shall be remanded in order for the ALJ to reconsider the medical opinions.  If the ALJ does not adopt their opinions, the ALJ must provide legally valid reasons for rejecting some or all of their opinions.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 17th day of June 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge